`IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES RIVER INSURANCE COMPANY,  )
                                )
          Plaintiff,            )
                                )
v.                              )     Civil Action No. 3:16-cv-886-HEH
                                )
ALL RESORT COACH, INC. d/b/a    )
LEWIS STAGES,                   )
                                )
          Defendant.            )

## MEMORANDUM OPINION
**(Granting Defendant's Motion to Dismiss for Lack of Personal Jurisdiction)**

This matter involves an alleged breach of contract by Defendant All Resort Coach,

Inc. d/b/a Lewis Stages ("Defendant"), a Utah corporation.  The dispute arose from a

commercial general liability insurance policy Defendant purchased from Plaintiff James

River Insurance Company ("Plaintiff").  Presently before the Court is Defendant's

Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2), or alternatively for a Transfer of Venue to the United States District

Court for the District of Utah pursuant to 28 U.S.C. § 1404. (ECF No. 16.)  The parties

have briefed the issues and submitted exhibits addressing the pertinent underlying facts,

and the matter is now ripe for decision.  Because Defendant lacks the necessary contacts

with Virginia, the Court will grant Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction.

## I. BACKGROUND

"In considering a defendant's challenge to personal jurisdiction, a court must construe all relevant allegations in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction." *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 853 (E.D. Va. 2000). *See also Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Viewed through this lens, the facts are as follows.

Plaintiff is an Ohio corporation with its principal place of business in Richmond, Virginia (Compl. ¶ 1.) Defendant is a Utah corporation with its principal place of business in Salt Lake City, Utah. (*Id.* at ¶ 2.) On November 14, 2014, Defendant submitted an application for general commercial liability coverage through its insurance broker, Sam Lambert, of Lambert Insurance Services/Insurance Solutions Group of Utah, Inc. ("Retail Broker"). (*Id.* at ¶ 5; Def.'s Reply Br. Supp. Mot. Dismiss Ex. B, at 4, ECF No. 27-2.) In turn, the Retail Broker requested quotes from its wholesale broker, Burns & Wilcox of Utah ("Wholesale Broker"). (Am. Answer 2, ECF No. 28.)

In response, Plaintiff sent the Wholesale Broker an insurance quote requiring an advance premium of $89,955, subject to the payment of additional premium of $119.94 per each $1,000 of Defendant's gross receipts in excess of $750,000 as determined by semi-annual audits. (Compl. ¶ 8; Budisin Decl. 6, ECF No. 27-1.) The Wholesale Broker then submitted the quote to the Retail Broker, who conveyed it to Defendant for acceptance. (Budisin Decl. 4–5.) On December 12, 2014, Defendant accepted the offer and Plaintiff issued a commercial general liability policy numbered 00064994-0 ("Policy"). (Compl. at ¶ 9–11.)

2

In July, 2015, Plaintiff conducted an audit of Defendant's gross receipts as required by the Policy. (*Id.* at ¶ 16.) The Retail Broker served as intermediary during the audit, requesting information from Defendant and transmitting it to Plaintiff. (Budisin Decl. 31.) Thereafter, on September 9, 2015, the parties agreed to amend the Policy, requiring Defendant to pay an additional premium in the amount of $427,706.00 and reducing the $119.94 composite rate in the original Policy to $99.55 per each $1,000 of Defendant's gross receipts in excess of $5,200,000. (Pl.'s Br. Opp'n Summ. J. 3, ECF No. 22.) On September 11, 2015, Defendant received confirmation of the Policy modifications and an invoice from the Retail Broker. (Budisin Decl. 34–38.)

In 2016, Plaintiff sent two letters to Defendant stating Plaintiff had "not received payment from [Defendant's] broker . . . ." These letters, dated February 5 and June 2, requested payments for $342,164.80 and $80,929.00, respectively. (Compl. Ex. B, at 1, ECF No. 1-5; Compl. Ex. C, at 1, ECF No. 1-6.)

Plaintiff filed this breach of contract action on November 3, 2016, alleging that Defendant owes it $ 423,093.80 in unpaid premiums. (Compl. ¶ 38.)

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the court's exercise of personal jurisdiction over a defendant. "When a court's personal jurisdiction is properly challenged . . . the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs.*, 2 F.3d at 59–60; *see also Grayson v. Anderson,* 816 F.3d 262, 267 (4th Cir. 2016). When, as here, "the court addresses the

personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson,* 816 F.3rd at 268.

"When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id.* "Ultimately, however, a plaintiff must establish facts supporting jurisdiction over the defendant by a preponderance of the evidence." *Id.*; *see also People Express Airlines, Inc. v. 200 Kelsey Assocs., LLC,* 922 F. Supp. 2d 536, 541 (E.D. Va. 2013).

Federal courts may exercise personal jurisdiction over a defendant who is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Virginia extends the grant of personal jurisdiction as far as the Due Process Clause allows. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 301 (4th Cir. 2012). Therefore, the statutory and constitutional inquiries merge, and the reviewing court "has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Id.*; *DeCusati v. Reiss Eng'g, Inc.,* No. 3:15-CV-204, 2015 WL 4622494, at *1 (E.D. Va. 2015). Accordingly, the Court will employ the well-established Due Process analysis.[1]

---

[1] The Court notes that even though Virginia's long-arm statute intends to extend personal jurisdiction as far as the Due Process Clause allows, it remains "possible that a non-resident

## III. DISCUSSION

Under the Due Process Clause of the Fourteenth Amendment, a court may exercise personal jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Fairness is the touchstone of the jurisdictional inquiry." *Tire Eng'g*, 682 F.3d at 301.

There are two types of personal jurisdiction: general and specific. "General personal jurisdiction . . . requires 'continuous and systematic' contact with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *People Express Airlines*, 922 F. Supp. 2d at 542 (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir.2009)). "Specific jurisdiction 'requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.'" *Id.* General jurisdiction requires "a 'more demanding showing' of minimum contacts than is required to establish specific jurisdiction." *English Boiler & Tube, Inc. v. Glex Inc.*, No. 3:12-CV-88, 2012 WL 2131895, at *3 (E.D. Va. 2012) (quoting *Tire*

---

defendant's contacts with Virginia could fulfill the dictates of due process, yet escape the literal grasp of Virginia's long-arm statute." *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 423 (E.D. Va. 1996) ("Put another way, Virginia's long-arm statute provides a ceiling of procedural protections above the federal floor of constitutional due process."). Here, however, because the Court finds that Plaintiff has not met the constitutional due process requirements, it "need not reach the issue of whether Virginia's arguably more stringent long-arm statute would have *also* denied the court personal jurisdiction." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 n.4 (4th Cir. 2009).

*Eng'g*, 682 F.3d at 301). Here, Plaintiff argues only that the Court has specific

jurisdiction over Defendant, so this analysis is confined to that criterion.

The Fourth Circuit has established a three-part test for assessing specific personal

jurisdiction. Courts consider: "(1) the extent to which the defendant purposefully availed

itself of the privilege of conducting activities in the State; (2) whether the plaintiffs'

claims arise out of those activities directed at the State; and (3) whether the exercise of

personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp.*,

561 F.3d at 278 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707,

712 (4th Cir.2002)). Only when Plaintiff satisfies the first prong of the analysis will the

Court need to consider the second and third prongs. *Consulting Eng'rs*, 561 F.3d at 278;

*see also Liberty Mut. Fire Ins. Co. v. KB Home*, No. 4:13CV98, 2013 WL 6185882, at *4

(E.D. Va. Nov. 25, 2013).

The first prong of the inquiry embodies the "requirement of constitutional due

process that the defendant purposefully availed [itself] of the privilege of conducting

business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. "[T]he

defendant's conduct and connection with the forum State must be such that it should

reasonably anticipate being haled into court there." *Anita's New Mexico Style Mexican*

*Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314, 318 (4th Cir. 2000) (citation

and quotation marks omitted). "A defendant's actions that are directed at the forum state

in only a random, fortuitous, or attenuated way are insufficient to support jurisdiction."

*ESAB Grp., Inc., v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012) (citation and

quotation marks omitted).

Courts may "consider[] various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Consulting Eng'rs*, 561 F.3d at 278. In the context of contractual disputes, courts often consider: "(1) where any drafting of the contract occurred, and where the negotiations took place; (2) who initiated the contact; (3) the extent of the communications, both telephonic and written, between the parties; and (4) where the contract said the parties' performance would occur." *Indep. Printers Worldwide, Inc. v. Cole,* No. 3:15-CV-185, 2015 WL 4705507, at *7 (E.D. Va. 2015); *see also Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 451 (4th Cir. 2000); *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986)

"Although it is true that a single contractual relationship may furnish a basis for jurisdiction, . . . the [United States Supreme] Court has expressly denied that an individual's contract with an out-of-state party can alone automatically establish" the requisite purposeful availment. *Chung*, 783 F.2d at 1127–28 (citation and quotation marks omitted); *see also Diamond Healthcare of Ohio, Inc.,* 229 F.3d at 451; *Cole*, 2015 WL 4705507, at *7. No single factor is determinative, and courts must "[e]xamin[e] with care all of the facts and circumstances . . . presented." *Chung*, 783 F.2d at 1129.

These principles, applied to this case, suggest that jurisdiction is constitutionally doubtful. There are no facts here that allow the Court to conclude that Defendant purposefully directed its activities toward Virginia. The first factor weighs heavily against the exercise of jurisdiction. While the policy in question was drafted by Plaintiff in Virginia, all pertinent negotiations took place through third-party intermediaries

located in Utah. Negotiations were apparently minimal, given that Plaintiff issued the Policy only one month after Defendant submitted its application. There is no evidence in the record suggesting Defendant ever negotiated directly with Plaintiff, nor that either of the brokers negotiated on Defendant's behalf in Virginia. This clearly falls short of the substantial connection required to establish minimum contacts based on a single contract.

The second factor in the analysis also weighs against the exercise of jurisdiction. Plaintiff asserts, and Defendant does not deny, that Defendant initiated contact by submitting an application for insurance. However, the record shows that Defendant submitted its application to the Retail Broker, located in Utah, who in turn transmitted the application to the Wholesale Broker, also located in Utah. The application was routed to Virginia by a third party and not at Defendant's direction. The mere fact that its ultimate destination was Virginia is insufficient to support personal jurisdiction. *See ESAB Grp.*, 685 F.3d at 392.

The third factor is similarly unavailing. Plaintiff has offered no evidence of any direct communications concerning Policy negotiations with Defendant. The record includes only two instances of direct communication between the parties, consisting of two collection letters sent by Plaintiff in 2016, well after the parties had negotiated the policy at issue. (Compl. Ex. B, at 1; Compl. Ex. C, at 1.) Moreover, there is no record of Defendant ever responding to Plaintiff's letters. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

8

Similarly, the fourth factor adds little support to Plaintiff's jurisdictional argument. The Policy itself offers little guidance regarding the place of performance, even covering activities on foreign soil. (Compl. Ex. A, at 17, ECF No. 1-4.) The parties did not agree to settle future disputes in any particular forum, agreeing only that Defendant "will submit to the jurisdiction of any court of competent jurisdiction within the United States of America." (*Id.* at 25.) Such broad language falls far short of the jurisdictional mark.

Despite Defendant's scant contacts with Virginia, Plaintiff argues that Defendant "should reasonably have expected to be haled into a Virginia court" for "negotiate[ing], purchas[ing], partially perform[ing] under, and renegotiate[ing]" the Policy with a Virginia insurer. (Pl.'s Br. Opp'n Mot. Dismiss 1.) This conclusory statement is of no moment. Likewise, contrary to Plaintiff's assertions, the fact that Plaintiff's personnel processed Defendant's Policy documents from Plaintiff's offices in Richmond, Virginia, is inconsequential. "In undertaking the minimum contacts analysis, it must be borne in mind that 'unilateral activity of another party or a third person is not an appropriate consideration.'" *Chung*, 783 F.2d at 1128 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

In light of all four factors, the Court finds that the Policy is insufficient to establish that Defendant purposefully availed itself of the privilege of conducting business under the laws Virginia. As such, Plaintiff fails to meet the first prong of the specific jurisdiction test set forth in *ALS Scan* and its progeny. Consequently, the Court need not extend its analysis to the other two factors. *Consulting Eng'rs*, 561 F.3d at 278 ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific

jurisdiction need we move on to a consideration of prongs two and three."). Asserting

personal jurisdiction over Defendant would violate the Due Process Clause of the

Fourteenth Amendment.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to make the

"prima facie showing of personal jurisdiction [required] to survive the jurisdictional

challenge." *Grayson,* 816 F.3rd at 268.  Accordingly, the Court will grant Defendant's

Motion to Dismiss and need not reach its alternative request for transfer of venue.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan. 27, 2017
Richmond, Virginia